UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DANIEL RODRIGUEZ, | ) No. CV 05-2643-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 12, 2005, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on May 12, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 22, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on December 22, 1960. [Administrative Record ("AR") at 55, 157.] He has an eleventh grade education. [AR at 55-56, 171.] His previous work experience includes jobs as a truck driver helper, store laborer, baker's helper, construction worker, and a kitchen helper. [AR at 32, 56-59, 166.]

On November 22, 2000, plaintiff protectively filed an application for Supplemental Security Income payments, alleging that he had been unable to work since November 22, 2000, due to mental stress. [AR at 157-60, 164-65.] After his application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on August 14, 2003, at which plaintiff appeared with counsel and testified on his own behalf. A vocational expert and a medical expert also testified. [AR at 51-93.] On October 24, 2003, the ALJ determined that plaintiff's alleged mental impairment or combination of impairments is not severe, and that plaintiff is not disabled. [AR at 31-41.] When the Appeals Council denied review on March 11, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 4-8.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

1  past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
2  case of disability is established. The Commissioner then bears the burden of establishing that the
3  claimant is not disabled, because he can perform other substantial gainful work available in the
4  national economy. The determination of this issue comprises the fifth and final step in the
5  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
6  at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the protective filing date of his application. [AR at 32, 40.] At step two, the ALJ concluded that plaintiff has the impairments of intermittent explosive disorder and a history of drug and alcohol abuse. The ALJ determined that the impairments are currently not severe, and that if they ever were severe during any relevant period, they were not severe for twelve continuous months. [AR at 32, 40.] Accordingly, the ALJ found plaintiff not disabled. [AR at 40.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends the following: (1) the ALJ erred in relying on the State agency physician to determine his impairments are not severe; and (2) the ALJ failed to properly consider the opinion of the treating psychiatrist. Joint Stipulation ("Joint Stip.") at 3. The Court determines that in light of new evidence submitted subsequent to the ALJ's decision, remand is in order to reassess the severity of plaintiff's mental impairment.

At step two of the sequential analysis, the ALJ determined that plaintiff's mental impairment of intermittent explosive disorder[1] is not severe. [AR at 38.] In the alternative, the ALJ determined

---

[1] Intermittent explosive disorder is characterized by "discrete episodes of failure to resist aggressive impulses that result in serious assaultive acts or destruction of property .... Examples of  serious assaultive acts include striking or otherwise hurting another person or verbally threatening to physically assault another individual. Destruction of property entails purposeful breaking of an object of value; minor or unintentional damage is not of sufficient severity to meet

4

that, even if plaintiff's mental impairment or combination of impairments were severe, it did not last for twelve continuous months. [AR at 37.] The ALJ based his conclusion on the opinion of the nonexamining State agency psychiatrist, who found that plaintiff's impairment was severe, but was not expected to last twelve months. [AR at 37, 317-30.]

The State agency psychiatrist completed a Psychiatric Review Technique form on July 18, 2001, finding that plaintiff suffers from a personality disorder that is characterized by "intense and unstable interpersonal relationships and impulsive and damaging behavior." [AR at 324.] Although the psychiatrist found no functional limitations with respect to daily living activities, social functioning, and maintaining concentration, persistence, or pace, he indicated there was insufficient evidence to measure whether plaintiff had any limitations with respect to repeated episodes of decompensation of an extended duration. [AR at 327.] In conclusion, the psychiatrist opined that plaintiff's impairment was "medically expected to be nonsevere by [June 2002]", eleven months later. [AR at 329.]

The Regulations define a "severe" impairment (or combination of impairments) as one that significantly limits a plaintiff's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized that including a "severity" inquiry at stage two of the evaluation process permits the Commissioner to screen out claimants whose impairments are so slight that they are unlikely to be found disabled even if age, education, and experience are considered. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994), citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). However, overly stringent application of the "severity" requirement would violate the statute by denying benefits to claimants who meet the definition of "disabled." Corrao, 20 F.3d at 949, citing Bowen v. Yuckert, 482 U.S. at 156-58 (O'Connor, J., concurring).

An impairment should be found to be "non-severe" only when the evidence establishes merely a slight abnormality, with no more than a minimal effect on ability to work. Corrao, id.,

---

this criterion." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), p. 663 (4th Ed. 2000).

citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(citing Social Security Ruling 85-28 (1985)).  Despite use of the term "severe" here, most Circuits (including the Ninth Circuit) have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996), citing Bowen v. Yuckert, 482 U.S. at 153-54; see also, e.g., Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)(evaluation can stop at step two only when there is no more than minimal effect on ability to work).  "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart,  433 F.3d 683, 687 (9th Cir. 2005).

Here, after the ALJ made his finding of non-severity, or alternatively, that plaintiff's condition did not meet the durational requirements for severity, plaintiff submitted additional evidence to the Appeals Council.  On May 13, 2004, plaintiff sent records from Citrus Valley Medical Center relating to plaintiff's March 30, 2004, hospitalization for a suicide attempt. [AR at 372-92.]   His lab results at that time tested positive for drugs. [AR at 392.] Plaintiff submitted further records on August 11, 2004, involving his treatment at Arcadia Mental Health Center. [AR at 393.] According to one treating note which appears to be dated July 13, 2004, plaintiff reported that he was attending anger management classes, and that he was still experiencing trouble with authority and being around people. [AR at 396.]

On December 8, 2004, plaintiff submitted additional records from Arcadia Mental Health Center. [AR at 9.]  According to these records, plaintiff was evaluated on July 13, 2004, and diagnosed with, inter alia, depressive disorder not otherwise specified, intermittent explosive disorder, and anti-social personality. [AR at 24.] He was assigned a Global Assessment of Functioning ("GAF") score of 40.[2] [Id.] In the assessment, it is noted that plaintiff has paranoid

---

[2] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See DSM-IV, p. 32.  A GAF score in the range of 31 to 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  Id. at 34.

delusions, suspicious ideations, and numerous behavioral disturbances, such as poor impulse control and excessive/inappropriate displays of anger. [AR at 23.] At that time, plaintiff reported taking several psychotropic medications (i.e., Zyprexa, Buspar, and Paxil), but that he had not taken illegal drugs (such as cocaine or heroin) since his apparent relapse in March 2004. [AR at 20-21.]

Based on this new evidence, plaintiff asserts that the nonexamining psychiatrist's opinion that plaintiff's condition would be non-severe by June 2002 is inconsistent with the present record, and, in turn, that remand is in order because the ALJ erred in relying on such opinion in his analysis of the severity of plaintiff's mental impairment. Joint Stip. at 4-5.

"[I]n determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). For new evidence to be material, it "must bear directly and substantially on the matter in dispute." Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984). The materiality requirement is satisfied and remand warranted "only where there is a *reasonable possibility* that the new evidence would have changed the outcome" of the earlier proceeding had the information been offered. See Booz v. Secretary of Health & Human Serv., 734 F.2d 1378, 1380 (9th Cir.1983) (emphasis in original). Good cause is shown if the "[n]ew information surfaces after the ... final decision [is issued] and the claimant could not have obtained that evidence at the time of the administrative proceeding." Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985). When there is no prejudice to the Commissioner, the good cause requirement is often liberally applied. Burton, 724 F.2d at 1417-18.

The Court has considered the new evidence, and determines that it is sufficiently material to warrant a remand for further proceedings. The ALJ's severity determination at step two hinged on the State agency psychiatrist's July 2001, opinion that plaintiff suffered from a severe impairment that was expected to end by June 2002. The new evidence shows, however, that plaintiff continued to be diagnosed with various mental disorders, including intermittent explosive disorder, as recently as July 2004. In fact, it appears that plaintiff's level of functioning may

actually have declined over time, as he was evaluated with a GAF score of 50 in September 2001 [AR at 336], and a score of 40 in July 2004. [AR at 34.] Moreover, the July 2004 evaluation notes that plaintiff exhibited numerous behavioral disturbances, as well as paranoid delusions and suspicious ideations -- symptoms which, if credited, would likely pose serious problems in the workplace. Accordingly, the new evidence is material, as it bears directly on plaintiff's mental condition, and raises a reasonable possibility of an outcome that is different from the ALJ's determination with respect to the second step in the analysis. See Burton, 724 F.2d at 1417; Booz, 734 F.2d at 1380. In addition, the Court finds there is good cause for plaintiff's belated submission, as the evidence was not available prior to the August 2003 hearing. See Key, 754 F.2d at 1551.[3]

Thus, bearing in mind that the step two inquiry is a "de minimis" screening tool, it appears that sufficient medical evidence may exist to deem plaintiff's mental impairment "severe" for Social Security purposes. Remand is therefore appropriate to have the ALJ assess whether, in light of the new evidence, this threshold has been met. If the ALJ finds that the relevant evidence is inadequate or ambiguous, he may choose to order further psychiatric examination of plaintiff in order to "fully and fairly develop the record ... to assure that [plaintiff's] interests are considered." Webb, 433 F.3d at 687 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam)).

Furthermore, in the event the ALJ determines that plaintiff's mental impairment or combination of impairments is, in fact, severe, the ALJ is instructed to continue with the next steps of the sequential analysis. Because this may result in changes to the ALJ's credibility analysis,

---

[3] While the "good cause" requirement is not met by a claimant "by merely obtaining a more favorable report once his or her claim has been denied," Mayes, 276 F.3d at 463, the Court finds that in light of the speculative nature of the State agency psychiatrist's assertion that plaintiff's impairment would end by June 2002, the new evidence -- to the extent it contradicts that assertion -- meets the relevant standard.

Further, while the Appeals Council considered and commented on the new evidence [AR at 5], it simply concluded that the records confirm that plaintiff's "major problem is substance abuse." It did not address the new evidence as it relates to a main issue in this action -- whether the State agency psychiatrist was correct in concluding that plaintiff's impairment would end by June 2002. To that extent, the Appeal Council's review was inadequate.

which in turn may alter the ALJ's consideration of the opinion of plaintiff's treating psychiatrist, the remaining claims will not be addressed at this time.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to evaluate the severity of plaintiff's mental impairment in light of the recently submitted new evidence. The ALJ is directed to take whatever further action is deemed appropriate and consistent with this decision.[4]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is **REMANDED** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 5, 2006

/s/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[4] In light of the Court's remand order, the Court does not address plaintiff's remaining contentions of error.